John H. Podesta (State Bar No. 154706)
John.podesta@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
655 Montgomery Street, Suite 900
San Francisco, CA 94111
Telephone: 415.433.0990
Facsimile:  415.434.1370

Attorneys for Defendant
AMGUARD INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN CARLTON, an individual<br><br>                              Plaintiff,<br><br>        v.<br><br>AMGUARD INSURANCE COMPANY, a foreign corporation; and DOES 1 to 100, inclusive,<br><br>                      Defendants. | Case No. **2:22-cv-02030-WBS-DB**<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT BY AMGUARD INSURANCE COMPANY OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>**DATE: May 28, 2024**<br><br>**TIME: 1:30pm**<br><br>**COURTROOM:** |

        TO PLAINTIFF DAN CARLTON AND HIS ATTORNEY OF RECORD,

PLEASE TAKE NOTICE THAT ON THE ABOVE DATE AND TIME, Defendant

AmGUARD Insurance Company will and hereby does move this court for an order  granting

Summary Judgment in its favor on Plaintiff's Complaint.

        This motion will be based on the fact that there is no coverage under the AmGUARD

Insurance Company policy issued to DMM Holdings and Dan Carlton for the claims

presented in this matter, and therefore there is no breach of contract or breach of the covenant

of good faith.

1      In the alternative, Defendant seeks Partial Summary Judgment as to Plaintiff's claim

2 for Breach of the Covenant of Good Faith and Punitive Damages.  The facts as presented by

3 the policyholder demonstrate that there was a good faith basis to deny coverage, and there

4 is no clear and convincing evidence of malice, oppression or fraud as required under Civil

5 Code 3294.

6      This motion will be based upon this notice of motion, the memorandum of points and

7 authorities served and filed herewith on the declarations of John H Podesta and Eileen Kelly

8 the Separate Statement of Undisputed Facts and Compendium of Evidence filed herewith in

9 support, on the court's own files and on such other matter as may be presented at the hearing

10 on this motion.

11

12 Dated:  March 1, 2024

13                    WILSON, ELSER, MOSKOWITZ, EDELMAN &

14                    DICKER LLP

15                    By _____

16                            JOHN H. PODESTA

17                         Attorneys for Defendant
                          AMGUARD INSURANCE COMPANY

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AMGUARD'S MOTION FOR SUMMARY JUDGMENT

293845759v.2

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 6

II.   FACTS IN SUPPORT OF THIS MOTION ................................................. 7

    A.   The AmGUARD Homeowner's Policy ............................................. 7

    B.   Loss to Carlton's Boat and Property Inside of It ............................. 9

    C.   Carlton Reports the Loss and AmGUARD's Denial of Coverage ............... 10

III.  STANDARD OF REVIEW ................................................................ 12

IV.   ARGUMENT ........................................................................ 13

    A.   THERE IS NO COVERAGE FOR THIS LOSS UNDER THE AMGUARD HOMEOWNERS' POLICY ....................................... 13

        1.   WAVES ARE NOT A COVERED PERIL, AND DAMAGE CAUSED BY WIND-DRIVEN WAVES ARE SPECIFICALLY EXCLUDED ........................................... 13

        2.   THE CAUSE OF THE PERSONAL PROPERTY LOSS WAS WAVE OR WIND-DRIVEN WAVE, NOT A WINDSTORM ....... 15

        3.   THE EFFICIENT PROXIMATE CAUSE DOCTRINE DOES NOT APPLY SINCE THERE ARE NOT TWO INDEPENDENT CAUSES OF LOSS ............................. 17

        4.   THERE IS NO REASONABLE EXPECTATION OF COVERAGE; MR, CARLTON PURCHASED SEPARATE COVERAGE FOR HIS BOAT AND ITS CONTENTS .................. 20

    B.   SINCE THERE IS NO COVERAGE, THERE IS NO BAD FAITH .......... 20

    C.   THERE IS NO WAIVER TO ASSERT COVERAGE LIMITATIONS ........................................................ 21

V.    CONCLUSION ................................................................ 22

DEFENDANT AMGUARD'S MOTION FOR SUMMARY JUDGMENT

293845759v.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alamia v. Nationwide Mut. Fire Ins. Co.*,
495 F. Supp. 2d 362 (S.D.N.Y. 2007)........................................................................ 14, 15

*Briggs v. Marcus-Lesoine, Inc.*
(1934) 3 Cal.App.2d 207 [39 P.2d 442]..................................................................... 20

*British Airways Bd. v. Boeing Co.*,
585 F.2d 946 (9th Cir. 1978) cert. denied, 440 U.S. 981 (1979) ............................... 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................... 12

*Central Nat. Ins. Co. v. Superior Court*,
2 Cal. App. 4th 926, 3 Cal. Rptr. 2d 622 (1992).......................................................... 17

*Chadwick v. Fire Ins. Exchange*
(1993) 17 Cal.App.4th 1112 [21 Cal. Rptr. 2d 871] ................................................... 18

*Coast Restaurant Group, Inc. v. AmGUARD Ins. Co.*
(2023) 90 Cal.App.5th 332 [307 Cal.Rptr.3d 133] ..................................................... 19

*Finn v. Cont'l Ins. Co.*
(1990) 218 Cal.App.3d 69 [267 Cal.Rptr. 22] ...................................................... 18, 19

*Gillis v. Sun Ins. Office, Ltd.*
(1965) 238 Cal.App.2d 408......................................................................................... 19

*Horphag Research, Ltd. v. Garcia*,
475 F.3d 1029 (9th Cir. 2007)..................................................................................... 12

*Howell v. State Farm Fire & Casualty Co.*
(1990) 218 Cal.App.3d 1446 [267 Cal.Rptr. 708] ...................................................... 18

*Lennar Mare Island v. Steadfast Ins. Co.*
(E.D.Cal. 2016) 176 F. Supp. 3d 949.......................................................................... 14

*Love*, *supra*,
221 Cal. App. 3d at p. 1153 ........................................................................................ 21

*Morris v. Allstate Ins. Co.*
(C.D.Cal. 2014) 16 F. Supp. 3d 1095 .................................................................... 16, 17

4

293845759v.2

*Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*
    (9th Cir. 2021) 15 F.4th 885 ................................................. 19

*Powell v. Liberty Mut. Fire Ins. Co.*
    127 Nev. 156 [252 P.3d 668] (2011) .................................. 14, 15

*Purdy v. Buffums, Inc.,*
    95 Cal. App. 299 [272 P. 770] ........................................... 20, 21

*Roberts v. Assurance Co. of America*
    (2008) 163 Cal.App.4th 1398 [78 Cal. Rptr. 3d 361] ........................... 18, 19

*Strubble v. United Services Auto. Assn.,*
    35 Cal. App. 3d 498, 110 Cal. Rptr. 828 (1973) ........................... 17

*Waller v. Truck Ins. Exch., Inc.,*
    11 Cal. 4th 1, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (1995) ........................... 21

**Statutes**

Cal. Civ. Code § 1636 ................................................. 14

Cal. Civ. Code § 1638 ................................................. 14

Cal. Civ. Code § 1639 ................................................. 14

Cal. Civ. Code § 1647 ................................................. 20

Insurance Code § 530 ................................................. 13, 18

Insurance Code § 2070 ................................................. 7

**Rules**

Fed. R. Civ. Proc. 56(c) ................................................. 12

**Other Authorities**

Hon. Croskey, et al., California Practice Guide: Insurance Litigation §
    6:253.2 (The Rutter Group 2013) ................................................. 17

https://www.britannica.com/science/windstorm ................................................. 16

DEFENDANT AMGUARD'S MOTION FOR SUMMARY JUDGMENT

293845759v.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Dan Carlton's ("Plaintiff" or "Carlton") fishing boat was swamped by a wave.  It sank and all of its contents and fishing equipment including his personal property onboard was lost off the coast of Baja California in Mexico.  Dan Carlton purchased insurance to cover his boat and his onboard belongings from GEICO. Defendant, AmGUARD Insurance Company ("AmGUARD" or "Defendant"), issued a Homeowners policy to Mr. Carlton for his house in Sacramento which covered his home and contents. Carlton submitted a claim to AmGUARD under his homeowner's policy for the personal property and lost fishing equipment, less the amount recovered from his boat insurer (GEICO).  However, this claim was not, and never was, a claim covered by his AmGUARD homeowners' insurance policy.

Carlton's homeowners' insurance policy provides "named peril" coverage for damage to or loss of personal property.  That means that the personal property must be damaged directly by one of the covered "perils" identified in the policy.

Under the AmGUARD policy, damage caused by a wave is not a covered peril.  To eliminate any doubt, damage caused by "waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge" is *specifically excluded*. Therefore, damage to Mr. Carlton's property caused by waves, including wind-driven waves, is not covered.

Additionally, while "windstorm" is a covered peril, "wind" is not.  This raises three points.  *First*, as to damage caused by "windstorm", "watercraft" and its "equipment" are only covered if they are in a fully enclosed building.  *Second*, the policy does not cover damage caused by mere "wind".  The significance of using "storm" as part of the named peril is that at the time of the damage, there must be more than a normal localized disturbance.  Here there is a claim of damage caused by 'wind', but no evidence of a more severe "windstorm".  *Third,* the "windstorm" itself must cause damage to the personal

6

293845759v.2

property.  In this case, Carlton has shown no evidence of a "storm", nor evidence that the "windstorm" caused any damage.

During the claim adjustment process, Carlton was represented by current counsel regarding the denial of coverage on December 21, 2021.  Counsel has attempted to create coverage by avoiding the policy's specified wave exclusion utilizing legal "sleight of hand", arguing that the Efficient Proximate Cause doctrine applies, and that "wind" was the predominant cause of loss.  However, the Efficient Proximate Cause doctrine does not apply here because there is a single cause: waves or waves driven by wind caused the damage.  Even if wind or windstorm created the waves that caused the damage, this cause is specifically excluded.    There is not a "covered cause" and an "excluded cause".  Consequently, the efficient proximate cause doctrine has no application and is no reason to deny Summary Judgment.  Consequently, dismissal of Carlton's breach of contract claim is warranted.

Finally, in California, if there is no coverage for the loss, there can be no liability for Breach of the Covenant of Good Faith, i.e., bad faith liability.

The evidence for this motion is straightforward.  It is the boat captains' testimony, Dan Carlton's testimony, Dan Carlton's reporting regarding the loss occurrence and its documentation in the claim file, and the policy itself.

## II.    FACTS IN SUPPORT OF THIS MOTION

### A.  The AmGUARD Homeowner's Policy

AmGUARD issued Homeowners Insurance policy number DAHO142288 to DMM Holdings, LLC and Dan Carlton, which was in effect between November 28, 2020 and November 28, 2021, (Undisputed Material Fact No. 1, and evidence in support thereof. Hereafter referred to as "UMF No. _")  The policy provides coverage for damage to the Insured's home, and separately for damage to personal property.  (UMF No. 2) The policy form is industry standard, consistent with the California Standard Fire Insurance policy form, Insurance Code §2070 *et eq.* The policy provides "all risk" coverage for damage to

DEFENDANT AMGUARD'S MOTION FOR SUMMARY JUDGMENT

the structure of the home, meaning that if there is direct physical damage to the house, it is covered unless an exclusion applies. (UMF No. 3) Personal property coverage, however, is provided on a "named peril" basis. (UMF No. 4)

This claim involves Coverage C, Personal Property coverage. (UMF No. 5) For "personal property" coverage, the policy spells out Sixteen (16) covered causes of loss, or "perils" for which there is coverage for damage to personal property. (UMF No. 6) Like nearly every insurance policy, there is a broad insuring agreement, and then there are exclusions that narrow the coverage. To be covered, the claim must fall within the insuring agreement, showing that the damage is caused by a covered "peril", but not within an exclusion. For purposes of this claim, the following are the critical policy terms.

**First, the Insuring Agreement.** (UMF No. 7)

**SECTION I – PROPERTY COVERAGES**

**C. Coverage C – Personal Property**
**1. Covered Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world.

**Second, the Covered Perils for Personal Property** (UMF No. 8)

**SECTION I – PERILS INSURED AGAINST**
**B. Coverage C – Personal Property**
We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

    **1. Fire Or Lightning**
    **2. Windstorm Or Hail**
    This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind

DEFENDANT AMGUARD'S MOTION FOR SUMMARY JUDGMENT

1    or hail damages the building causing an opening in a roof or wall and
2    the rain, snow, sleet, sand or dust enters through this opening.

3    **Third, The Water Exclusion** (UMF No. 9)

4    **SECTION I – EXCLUSIONS**
5    **A.** We do not insure for loss caused directly or indirectly by any of the
following. Such loss is excluded regardless of any other cause or event
6    contributing concurrently or in any sequence to the loss. These exclusions
7    apply whether or not the loss event results in widespread damage or affects
a substantial area.
8    […]
9        **3. Water**

10       This means:

11
12       **a.** Flood, surface water, **waves**, including tidal wave and tsunami,
tides, tidal water, overflow of any body of water, or spray from any of
13       these, all **whether or not driven by wind, including storm surge**;
14       (emphasis added)

15    **B. Loss to Carlton's Boat and Property Inside of It**

16       On the evening of November 3, 3021, Carlton's craft "Golo", a 45-foot inboard
17    powered fishing boat that he insured for $545,000[1], was being piloted off the coast of Baja
18    California. (UMF No. 10) Carlton was not on the boat at the time.  The pilot/captain, who
19    was paid monthly on retainer to pilot Carlton's boat, was moving the boat from the home
20    port of Cabo San Lucas to Magdalena Bay. (UMF No. 11)  The plan was that Carlton and
21    his guests would meet up with the captain for several days of fishing. (UMF No. 12)
22    However, early in the morning of his departure from Sacramento to Baja by private plane
23    on November 4, 2021, he received a text message that something was wrong (UMF No. 13),
24    and he eventually discovered that the boat was capsized and then broken apart by the surf
25    near the town of Todos Santos. (UMF No. 14) Divers went to the scene but could not recover
26
27    _____
28    [1] The amount is for context only.  The insurance Certificate with the policy limit is Exhibit
11 to this motion.

9

the boat, its contents, or any of the fishing equipment that was stored onboard the boat. He was told by his Captain that the wind was very high. (UMF No. 15)

The captain's deposition was taken through a translator.  His version was similar to that which was relayed by Mr. Carlton.  He was travelling parallel to the coast from Cabo to Magdelena when he encountered an area of high wind. (UMF No. 16) The captain decided to try and go around this area by maneuvering closer to the shore. (UMF No. 17) However, a large wave came over the gunwale and swamped the motors, (UMF No. 18) which were mid-ship below deck. (UMF No. 19) Without a motor, the boat drifted and was eventually sunk as it was pummeled by the wind-driven waves. (UMF No. 20) Mr. Carlton testified that he had encountered similar pockets of wind twice while on the Golo on other trips near Cabo San Lucas, where the boat was kept.  These wind pockets last for a period of time, and with the help of an experienced captain one goes through or around them to calmer water.  On the night in question, the captain testified that "there are big waves on that coast all the time." (UMF No. 21) This suggests that what befell the Golo was a pocket of wind.

Following the incident, Carlton testified that divers were sent to the location of the boat to see if any of the contents or equipment could be located.  Nothing was located or salvaged.  All that remained was the broken hull of the Golo. (UMF No. 22) Carlton was paid by GEICO for the loss of the boat and equipment, along with the policy limit for the personal property that was kept thereon. (UMF No. 23) In this action, Carlton is claiming additional amounts for the contents that were not paid for by GEICO. (UMF No. 24) Carlton testified that he never spoke to his homeowner's insurance broker about coverage for the boat, its equipment, or his personal property. He also never spoke to GEICO about increasing the $10,000 limit of his personal property coverage despite the fact he claims to have had over $150,000 in property on the boat that was lost. (UMF No. 25)

### C. Carlton Reports the Loss and AmGUARD's Denial of Coverage

A week following the boat accident, on November 10th, Carlton reported the loss to AmGUARD. (UMF No. 26) The customer service representative who took the loss information for the claim file documents the description of loss as: "Insured stated his boat

DEFENDANT AMGUARD'S MOTION FOR SUMMARY JUDGMENT

was hit and sank.  He lost all his fishing poles[sic] equipment, fishing gear, and etc."  (UMF No. 27)

Materials were submitted by Mr. Carlton to AmGUARD such as an inventory of the property loss, and photographs.  On December 21, 2021, Mr. Carlton and the adjuster, Nicole Ham, had a phone conversation.  The note by Ms. Ham, the Desk Adjuster, states:

> DA [Desk Adjuster] asked NI [Named Insured] what caused boat to sink. Captain advised NI that large wave sideswiped boat and capsized the boat. Advised that the wave is not a named peril in his policy and therefore Guard will be proceeding with denial of the claim.

Following this advice, Mr., Carlton pushed back.  The same note by Ms. Ham continues:

> NI inquired as to what named perils are, and those were relayed to him verbally, and will be reiterated in disclaimer letter. NI inquired how to proceed as he states Guard did not ask for any information from him or the captain of the boat. NI stated Guard made determination with no information. He was advised that procedure is stated in forthcoming letter, and he can reach out to CA Dept of Insurance if he feels necessary. The insured stated that the COL was WIND. He was advised that we can circle back with team to review tomorrow, but at this time we are standing by determination of denial. He did not have additional questions. (UMF No. 28)

Mr. Carlton remembered that conversation.  He remembered Ms. Ham saying that there was coverage for a windstorm but that the policy had an exclusion for waves.  (UMF No. 29) In an email to her manager following the call, Ms. Ham states:

> Email NH to Non and Justin:  I spoke with the insured Dan as scheduled and explained our reasoning for denying his claim. **He advised that the cause of the boat sinking was that a large wave capsized the boat; upon discussion of covered perils, he advised that the wind caused this wave. --** email chain and denial letter (UMF No. 30) (emphasis added)

Based upon this description, AmGUARD advised Carlton that damage caused by a wave was not a "named peril" and that the policy did not apply.  AmGUARD sent a denial letter that advised the insured of same. (UMF No. 31)

11

Shortly thereafter, Attorney Stuart challenged this denial, presenting legal argument and demanding that the claim denial be reconsidered[2]. (UMF No. 32) His legal argument centered on his view that the loss was caused by "wind" rather than a "wave". In his view, the "efficient proximate cause" doctrine in California applies. That doctrine holds that where there are two *independent* causes of damage to insured property, if one is covered and one is not, then the "predominant" or most important proximate cause of the damage is the used for coverage purposes. In this case, he incorrectly asserted that "wind" was a covered peril, but that a "wave" was not, and wind was the "efficient proximate cause".

A series of letters were exchanged, wherein AmGUARD asked for additional information concerning the contention that "wind" rather than "wave" caused the damage to the personal property. (UMF No. 33) However, the letters did not contain any additional facts that were relevant to this coverage determination. Mr. Carlton contended that wind caused the damage to his property, but never provided any actual evidence of either the amount of wind or the damage caused by wind. AmGUARD continued to maintain that damage caused by a wave was not covered, and though they would accept and review any new information provided by the insured, nothing demonstrated this was a covered claim.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). As the party moving for summary judgment, AmGUARD must demonstrate that there are no genuine issues of material fact. *See Horphag Research, Ltd. v. Garcia,* 475 F.3d 1029, 1035 (9th Cir. 2007). Once AmGUARD has met its burden, the burden then shifts to

---

[2] The original amount of the estimated personal property loss has since been revised downward due to discovery of some recovered items and duplications. We do not wish to imply that there was any intent to deceive regarding the extent of damages, but that was the number at the time.

293845759v.2

plaintiffs to present specific facts showing that contradiction is possible. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 950-52 (9th Cir. 1978) cert. denied, 440 U.S. 981 (1979). Such specific facts may not be based upon mere speculation and conjecture. Instead, plaintiffs must submit admissible evidence that creates a genuine dispute as to a material fact. *See id.*

This action presents no triable issues of material fact. The loss is not covered. AmGUARD acted reasonably in denying coverage.

## IV.  ARGUMENT

### A.  THERE IS NO COVERAGE FOR THIS LOSS UNDER THE AMGUARD HOMEOWNERS' POLICY

#### 1.  WAVES ARE NOT A COVERED PERIL, AND DAMAGE CAUSED BY WIND-DRIVEN WAVES ARE SPECIFICALLY EXCLUDED

There is no dispute that damage caused by waves is not identified as a covered peril. Therefore, if the loss of the personal property was directly caused by a wave, it is not covered.

In addition, the Water exclusion, which includes waves and wind-driven waves, applies to the exact scenario that occurred here as reported by Mr. Carlton and the pilot. Wind caused the seas to become rough, churning up a wave that overcame the gunwale and thereby flooded the motors. Without power, the captain lost control and the waves eventually crashed into the boat and broke it apart. The personal property fishing equipment was lost at sea. While the entire exclusion is quoted above, read in context it provides:

**A.** We do not insure for loss [to Personal Property] caused directly or indirectly by any of the following.[3]

[…]

**3. Water**

This means…, **waves**, including tidal wave and tsunami, or spray

---

[3] The balance of this first paragraph has been held to be contrary to the efficient proximate cause doctrine and Ins Code 530. Since Defendant is not relying on the "anti-concurrent cause" language of the exclusion, we do not cite it here

293845759v.2

from any of these, all **whether or not driven by wind…** (emphasis added)

In interpreting the exclusion, Judge Mueller summarized the principals of contract interpretation in *Lennar Mare Island v. Steadfast Ins. Co.* (E.D.Cal. 2016) 176 F. Supp. 3d 949, 955 as follows:

> A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. A court looks first and foremost to the contract's language, which controls if "clear and explicit," provided it "does not involve an absurdity." *Id.* § 1638. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . .." *Id.* § 1639.

In *Alamia v. Nationwide Mut. Fire Ins. Co*., 495 F. Supp. 2d 362, 367 (S.D.N.Y. 2007), the District court set forth the burden of an insurer seeking to enforce an exclusion thusly: "if an insurer wishes to exclude coverage by virtue of an exclusion in its policy, it must (1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding covering under the exclusion is the only interpretation of the exclusion that could fairly be made, and (3) establish that the exclusion clearly applies to this particular case. *Alamia* was cited by the Nevada Supreme Court in *Powell v. Liberty Mut. Fire Ins. Co*. 127 Nev. 156, 164 [252 P.3d 668, 674] (2011)

We begin with the plain language.  The plain language of the AmGUARD exclusion applies to damage to personal property caused by waves, wind-driven waves, and water. There is no other explanation for what happened here.  Waves of water swamped the boat and its engine.  The boat was then broken apart, which lead to the loss of all the personal property aboard.  Therefore, the first requirement is met; that the exclusion is written in obvious and unambiguous language. Water in the form of waves caused the loss of the personal property.

The second *Alamia* requirement is also met, to wit: the interpretation that coverage is excluded is the *only* interpretation of the exclusion that could fairly be made.  There is no

293845759v.2

qualification for different wave types or causes.  All damage to personal property caused by waves is excluded, *including whether the waves are wind driven or not.* Wind-driven waves are a subset of waves generally, but all waves are excluded.  The exclusion contains no qualifier as to the cause or the effect where damage caused by waves might be covered depending on the circumstances.  As an example of this second prong not being satisfied and therefore the exclusion was inapplicable, in *Powell, supra.,* the policy contained an exclusion for "earth movement" and listed causes giving examples of naturally occurring events.  The Nevada Supreme Court concluded there was a question whether the exclusion encompassed both naturally occurring and human causes of earth movement. Since the exclusion did not clearly apply to both, the court found it ambiguous and did not apply the exclusion to earth movement caused by negligent construction. Here, by contrast, the excluded cause is waves, *whether or not caused by wind.*  There is no circumstance where damage caused by water in the form of waves is covered.  There is no limiting qualifier that damage by only certain waves is excluded.

The third *Alamia* element is likewise satisfied, as the exclusion clearly applies in this case.  Based on the evidence, the Golo was in the ocean, where it encountered an area of high winds.  However, the wind did not cause any damage to the Golo by itself, rather, the damage occurred when the wave rendered the Golo uncontrollable.  The waves crashed into the boat and broke it apart, according to the pilot, Mr. Flores, and the personal property was lost.

As such using the "plain language" of the exclusion and applying the undisputed facts of the loss, the "water" exclusion applies.

### 2.    THE CAUSE OF THE PERSONAL PROPERTY LOSS WAS WAVE OR WIND-DRIVEN WAVE, NOT A WINDSTORM

Here there is no dispute as to what happened.  Mr. Carlton's boat was being piloted along the coast of Baja Mexico.  Though it was supposed to be clear weather, he ran into a wind pocket that caused waves.  In that environment, a wave crashed over the gunwale and flooded the engine.  Drifting with no ability to steer or maneuver without an engine, the boat

293845759v.2

1    was tossed around by the waves and eventually broke apart and sank.  Eventually, the Golo

2    ended up on the beach and the personal property lost, presumably in the ocean waves.  The

3    crew of the boat swam to shore, and divers never recovered any of the lost property.  The

4    policy provides

> **SECTION I – PERILS INSURED AGAINST**
> **B. Coverage C – Personal Property**
> We insure for direct physical loss to the property described in Coverage **C**
> caused by any of the following perils unless the loss is excluded in Section **I**
> – Exclusions.
>
>      **1. Fire Or Lightning**
>      **2. Windstorm Or Hail**
>      ***This peril includes loss to watercraft*** of all types ***and their*** trailers,
>      furnishings, ***equipment***, and outboard engines or motors, ***only while***
>      ***inside a fully enclosed building.***

Thus, to be covered, the loss must be: (1) loss to personal property, (2) the loss to the personal property must be caused by "windstorm", but (3) as to watercraft and its equipment, the coverage only applies while it is inside a fully enclosed building.  In other words, very limited coverage is provided for watercraft and its equipment, as it only applies while it is essentially in storage and inside a building.

As for the first element, this loss is to fishing equipment that has no intended use on shore, it is arguably equipment of the watercraft.  It would therefore not be covered since the boat was on the open ocean rather than in a fully enclosed building.  In other words, if the fishing equipment was the "equipment" of the watercraft, there is no coverage.

As to the second element, assuming that the fishing equipment was not "equipment" of the Golo, while there is evidence of wind, there is no evidence of a "windstorm", *Morris v. Allstate Ins. Co.* (C.D.Cal. 2014) 16 F. Supp. 3d 1095, 1101-1102.  A windstorm is generally distinguished from an area of high wind that is normal for the area.  Examples include tornados and hurricanes[4]. A windy day is not a "windstorm".  Mr. Carlton testified

---

[4] https://www.britannica.com/science/windstorm

DEFENDANT AMGUARD'S MOTION FOR SUMMARY JUDGMENT

293845759v.2

that he experienced periodic localized instances of high winds on his boat, the Golo, while in the Cabo San Lucas area where it was kept. In the roughly 10 months that he owned the Golo, the same pilot encountered pockets of high winds with him aboard and would travel through the pockets or around them without damage to the Golo or the contents kept on board. Mr. Carlton has not even attempted to identify a storm or documented an area of low pressure that was out of the ordinary on the night of the accident.

Establishing that the loss is caused by a covered peril of windstorm, rather than simply a stray gust, is Carlton's burden according to *Morris, supra* at pg. 1101-1102:

> Under a "named perils" policy like Plaintiffs' personal property policy, the insured has the burden of proving that the loss was caused by a specifically enumerated peril. *Strubble v. United Services Auto. Assn.*, 35 Cal. App. 3d 498, 504, 110 Cal. Rptr. 828 (1973); *Central Nat. Ins. Co. v. Superior Court*, 2 Cal. App. 4th 926, 932, 3 Cal. Rptr. 2d 622 (1992); Hon. Croskey, et al., California Practice Guide: Insurance Litigation § 6:253.2 (The Rutter Group 2013). Plaintiffs claimed that their property was damaged by a "windstorm," and thus had to prove that the alleged damage to their personal property was caused by windstorm.

A pocket of higher-than-expected winds, which is not unusual for the locale, should not be considered a "windstorm". Mr. Carlton has not met his burden of establishing that the loss of his personal property was caused by the covered peril of "windstorm", or that the property was not the "equipment" of the Golo, notwithstanding that its only use was aboard the Golo.

### 3. THE EFFICIENT PROXIMATE CAUSE DOCTRINE DOES NOT APPLY SINCE THERE ARE NOT TWO INDEPENDENT CAUSES OF LOSS

Counsel for Mr. Carlton has posited that the exclusion does not apply, because "windstorm" is a covered peril, so even if damage caused by waves (including wind-driven waves) is excluded, the predominant cause, the "efficient proximate cause" is actually the wind [which is covered]. This argument misconstrues the doctrine as it applies to this case.

As a general matter the efficient proximate cause doctrine is only properly considered

17

where there are two *independent* causes of damage to the insured property, where one cause is covered and the other is not. Where either cause might have caused the damage, but one is "predominant", that one is considered the cause of loss for insurance coverage purposes. See Insurance Code §530 and *Howell v. State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1459 [267 Cal.Rptr. 708]

However, where the "covered cause" itself causes the "uncovered cause", there is a single cause of loss, and the doctrine does not apply. To illustrate, in *Finn v. Cont'l Ins. Co.* (1990) 218 Cal.App.3d 69, 72 [267 Cal.Rptr. 22], there was a broken pipe that leaked over time, eventually causing damage to the foundation of the house. The insurance policy covered damage caused by a suddenly breaking pipe, but not water damage from a slow leak. The insured argued that the breaking pipe was the "efficient proximate cause" and therefore the damage to the foundation was covered. However, the breaking pipe did not cause the damage to the house, it caused the slow leak of water that eventually damaged the house. The court stated that for the "efficient proximate cause" doctrine to be applicable, each cause must occur independently of the other. Otherwise, there is a single excluded cause of loss. *Finn* involved only one, a leaking pipe.

The same result follows where different aspects of the same cause are recharacterized. In *Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398 [78 Cal. Rptr. 3d 361], where the court found that negligent concealment of an ancient landslide by a contractor is not factually distinct from the landslide itself. The insured argued that the damage to the house was caused by a combination of contractor negligence in failing to disclose the ancient landslide, and the actual earth movement itself. "When, … the evidence shows the loss was in fact occasioned by only a single cause, albeit one susceptible to various characterizations, the efficient proximate cause analysis has no application." *Roberts at pg. 1409* citing *Chadwick v. Fire Ins. Exchange* (1993) 17 Cal.App.4th 1112, 1117 [21 Cal. Rptr. 2d 871].) Again, in that scenario there is only one cause of damage, the landslide.

Another example where there is a single cause of damage in sequence as applied to recent COVID cases, where businessowners' policies covered loss caused by a

DEFENDANT AMGUARD'S MOTION FOR SUMMARY JUDGMENT

293845759v.2

governmental order, but exclude loss caused by a virus.  In *Coast Restaurant Group, Inc. v. AmGUARD Ins. Co.* (2023) 90 Cal.App.5th 332, 345 [307 Cal.Rptr.3d 133], the court found that the government shutdown order was within the ambit of coverage.  However, the policy excluded loss caused by a virus.  The insured argued the government shutdown order was the efficient proximate cause, separate from the virus.  The court disagreed, relying on *Roberts* and *Finn,* holding that the excluded virus caused the government to issue the order.  The shutdown was a single cause: virus.  "The governmental orders could not under any circumstance have occurred independent of COVID-19. Thus, the governmental orders are not a conceptually distinct peril, and the efficient proximate cause doctrine does not apply."  The same scenario and result followed in *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.* (9th Cir. 2021) 15 F.4th 885, 894.  The virus caused the government order; there was a single excluded cause of loss.

That the covered and the excluded causes of loss must be independent is illustrated in a case that has facially similar facts to the instant one, but with a resounding difference.  In *Gillis v. Sun Ins. Office, Ltd.* (1965) 238 Cal.App.2d 408, a case cited by Mr. Carlton's lawyer in his letters to AmGUARD, the wind and the waves separately caused damage to a pier.  The policy language is essentially the same as AmGUARD's.  As for the windstorm, the court states: "On or about January 30, 1963, a *violent windstorm* arose and *caused the gangway to be lifted up and to fall violently upon the docking facility*, and as a result thereof the facility was caused to subside into the water."(at pg410-411) And, as for the excluded waves, the court continues: "*The next morning* the storm still persisted, *the waves were very high and the water was going over the top of the dock*. The dock was sunk further, and it had broken in two pieces." (At pg. 416) Therefore, unlike here, the covered windstorm caused damage by itself, rather than merely creating the high waves.

The court concluded that the efficient proximate cause doctrine applied, and that the wind was the predominant cause of the loss.

In this case, there is only one cause of loss, waves driven by wind.  To find that the

19

1   efficient proximate cause was relevant there would have to be a cause separate from "waves"

2   or "wind-driven waves".  Attempting to characterize the "covered peril" as "windstorm" is

3   inaccurate, where the wind resulted in the waves that caused the loss of personal property.

4   So, as with all these cases, there is but a single excluded cause and the doctrine has no

5   application.

### 4.  THERE IS NO REASONABLE EXPECTATION OF COVERAGE; MR, CARLTON PURCHASED SEPARATE COVERAGE FOR HIS BOAT AND ITS CONTENTS.

8       A relevant inquiry might be whether the insured reasonably expected his personal

9   property to be covered anywhere in the world as set out in the insuring agreement of the

10  AmGUARD policy. That argument, a vacuum, has some appeal  However, Mr. Carlton's

11  actions can be interpreted as an understanding that he didn't reasonably expect that. "A

12  contract may be explained by reference to the circumstances under which it was made, and

13  the matter to which it relates." (Civ. Code, § 1647). "The circumstances surrounding the

14  execution of a contract in writing, and the subsequent conduct of the parties thereto, may be

15  invoked to interpret it only in those cases where upon the face of the writing itself there is

16  doubt. *Briggs v. Marcus-Lesoine, Inc.* (1934) 3 Cal.App.2d 207, 212 [39 P.2d 442], citing

17  *Purdy v. Buffums, Inc*., 95 Cal. App. 299 [272 P. 770].)

18       Mr. Carlton bought specific coverage for his boat and its contents.[5]  Over $150,000

19  in fishing equipment, but he didn't ask either his homeowners insurance broker or his boat

20  insurance broker about coverage for it.  While neither the GEICO insurer nor its policy is

21  before the court, the GEICO policy was purchased for a loss that involves the boat capsizing

22  on the ocean and losing the contents and paid its policy limits.  Mr. Carlton's conduct in

23  purchasing two policies showed that his reasonable expectation was that he needed a policy

24  for his boat and its contents separate from his homeowners' policy.

### B.  SINCE THERE IS NO COVERAGE, THERE IS NO BAD FAITH

26  California law is clear.  The Breach of the covenant of good faith and fair dealing is

---

[5] See Deposition of Dan Carlton at 40:4 – 19

DEFENDANT AMGUARD'S MOTION FOR SUMMARY JUDGMENT

293845759v.2

a tort based on and growing out of the performance of the insurance contract.  If there is no coverage, there can be no bad faith.  "[B]ad faith claim cannot be maintained unless policy benefits are due.  *Waller v. Truck Ins. Exch., Inc.,* 11 Cal. 4th 1, 36, 44 Cal. Rptr. 2d 370, 390, 900 P.2d 619, 639 (1995):

> [T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement. (*Love, supra*, 221 Cal. App. 3d at p. 1153.) Thus, as the *Love* court noted, when benefits are due an insured, "delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because" they frustrate the insured's right to receive the benefits of the contract in "prompt compensation for losses." (*Ibid.*) Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and "should not be endowed with an existence independent of its contractual underpinnings." (*Ibid.*)
> (*Waller* at pg. 36)

Since there is no coverage for Carlton's personal property that was lost due to wind-driven wave, there is no cause of action for Bad Faith.

## C. THERE IS NO WAIVER TO ASSERT COVERAGE LIMITATIONS

*Waller* is also instructive on the issue of the denial letters sent to Mr. Carlton and his counsel.  The letters did not cite to the wave exclusion but pointed out that waves were not a covered peril.  "A denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." (*Waller* at page 31, 44 Cal. Rptr. 2d 370, 387, 900 P.2d 619, 636)  Waiver is the voluntary relinquishment of a known right.  The burden … is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver' [citation]." *Waller,* at page 31; 900 P.2d 619, 636.  In this case, the letters are clear that all rights are reserved, including the right to update or amend the position.

Furthermore, Mr. Carlton was also told there was no coverage for loss of personal

293845759v.2

property caused by a wave. He was told there was a wave exclusion in the policy. [6]   Here, AmGUARD issued a *denial* letter on the ground that damage caused by waves was not covered, correctly asserting that it was not a named peril under the policy.  That the policy also excluded damage caused by wind-driven waves is simply an additional reason for a lack of coverage.

## V.    CONCLUSION

AmGUARD issued a Homeowners' policy to Mr. Carlton, that was never intended to be a marine policy for the normal risks attendant to being on a boat in the open ocean.  He had a different policy specifically for that scenario.  The AmGUARD policy specifically excluded damage caused by waves and wind-driven waves, the exact peril to occur to Mr. Carlton's boat, the Golo, off the coast of Mexico.

There is no coverage under the policy, and certainly no bad faith or entitlement to punitive damages for taking this position.  Judgment is properly entered in favor of AmGUARD.

Dated:  March 1, 2024

WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP

By    _____

JOHN H. PODESTA
Attorneys for Defendant
AMGUARD INSURANCE COMPANY

---

[6] Carlton Deposition at 88:11-12: "I remember that I asked her why it was denied, and she said because there is a wave exclusion."

22

293845759v.2