UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DAN CARLTON, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>AMGUARD INSURANCE COMPANY, a foreign corporation; and DOES 1 to 100, inclusive,<br><br>    Defendant. | No. 2:22-cv-02030 WBS DB<br><br>MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff Dan Carlton brought this action against defendant AmGUARD Insurance Company, alleging breach of an insurance contract and bad faith. (Docket No. 1-1.) Defendant now moves for summary judgment. (Docket No. 15.)

I.  Factual & Procedural Background

Plaintiff owned a 45-foot motorized fishing boat. (See Def.'s Statement of Undisputed Facts (Docket No. 15-1) ("SUF") ¶ 10.) Plaintiff kept a boat captain, Luis Flores, on retainer to pilot the boat. (See id. ¶ 11.) On November 3, 2021, Captain

1

Flores began a trip to take the boat -- which was docked in Cabo San Lucas, Mexico -- to Magdalena Bay, also in Mexico.  (See id. ¶¶ 10-11.)  Plaintiff planned to travel via airplane from Sacramento to Magdalena Bay, where he and his guests would meet up with the captain for a fishing excursion.  (See id. ¶¶ 12-13.)

While en route to Magdalena Bay, the captain encountered rough weather, including high winds and large waves.  (See id. ¶¶ 16, 18.)  He lost control of the boat when a wave swamped the motors, which ultimately led the boat to be sunk by large waves near the coast.  (See id. ¶¶ 14-20.)  Plaintiff's personal property -- including fishing rods, fishing reels, fishing tackle, televisions, binoculars, wireless headsets, personal clothing, and a computer -- was on the boat at the time and was lost.  (See id. ¶ 28; Carlton Decl. (Docket No. 18-4) ¶ 3.)

Plaintiff had a boat insurance policy from a different insurer that paid out for the loss of the boat and $10,000 worth of personal property.  (See SUF ¶ 23-24.)  Plaintiff sought to recover the remaining value of the lost personal property (over $150,000) pursuant to a homeowner's insurance policy issued by defendant AmGUARD.  (See id. ¶¶ 5, 24.)

The policy covers "personal property owned or used by an 'insured' while it is anywhere in the world" and covers damage caused by a "windstorm."  (See id. ¶¶ 7-8 (emphasis added).)  Defendant denied coverage on the basis that damage by waves is excluded under the terms of the policy.  (See id. ¶ 29.)

II.  Standard of Review

Summary judgment is proper "if the movant shows that

2

1  there is no genuine dispute as to any material fact and the
2  movant is entitled to judgment as a matter of law." Fed. R. Civ.
3  P. 56(a).  A material fact is one "that might affect the outcome
4  of the suit under the governing law," and a genuine issue is one
5  that could permit a reasonable trier of fact to enter a verdict
6  in the non-moving party's favor.  Anderson v. Liberty Lobby,
7  Inc., 477 U.S. 242, 248 (1986).  While the moving party bears the
8  initial burden of establishing the absence of a genuine issue of
9  material fact, see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
10 (1986), the underlying facts must be viewed in the light most
11 favorable to the non-moving party, see Matsushita Elec. Indus.
12 Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

III. Breach of Insurance Contract

        Under California law, the interpretation of an insurance policy is a question of law requiring the court to "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it."  Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995).  "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."  Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1264 (1992).  "If contractual language is clear and explicit, it governs."  Id.

        In interpreting an insurance contract, "[a] policy provision is ambiguous when it is susceptible to two or more reasonable constructions."  E.M.M.I. Inc. v. Zurich Am. Ins. Co., 32 Cal. 4th 465, 470 (2004).  "The proper question is whether the provision or word is ambiguous in the context of this policy and

3

1  the circumstances of this case." Id. (cleaned up).  "If an
2  asserted ambiguity is not eliminated by the language and context
3  of the policy," then the ambiguity is "construed against the
4  party who caused the uncertainty to exist (i.e., the insurer) in
5  order to protect the insured's reasonable expectation of
6  coverage."  Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co., 18
7  Cal. 4th 857, 868 (1998), as modified (Sept. 23, 1998).

8      "The burden is on an insured to establish that the
9  occurrence forming the basis of its claim is within the basic
10 scope of insurance coverage."  Aydin Corp. v. First State Ins.
11 Co., 18 Cal. 4th 1183, 1188 (1998), as modified on denial of
12 reh'g (Oct. 14, 1998).  "[O]nce an insured has made this showing,
13 the burden is on the insurer to prove the claim is specifically
14 excluded."  Id.

15     Defendant advances several theories for its argument
16 that the policy does not cover the loss at issue.  The court will
17 address each in turn.

18     A.   "Windstorm"

19     The policy at issue here covers "personal property
20 owned or used by an 'insured' while it is anywhere in the world."
21 (Docket No. 15-2 at 31.)  "Windstorm" is listed as a "covered
22 peril."  (See id. at 38.)  The policy does not define
23 "windstorm."  (See id.)  Defendant argues that no windstorm
24 occurred and therefore the damage was not caused by a covered
25 peril.

26     While there is no binding authority on what constitutes
27 a windstorm, defendant cites Morris v. Allstate Insurance
28 Company, 16 F. Supp. 3d 1095 (C.D. Cal. 2014), which is the only

4

1  case the court has located defining the term under California
2  law.  The district court there relied on several dictionary
3  definitions that defined windstorm as "a storm with high winds or
4  violent gusts with little or no rain."  See id. at 1102.
5  Defendant's brief also argues that a windstorm "is generally
6  distinguished from an area of high wind that is normal for the
7  area."  (See Docket No. 15 at 16.)  This aligns with the approach
8  taken by several other jurisdictions that "construe[] the term
9  'windstorm' by . . . requir[ing] that the wind be 'unusual' in
10 some respect."  See 17 Couch on Ins. § 153:27; see also, e.g.,
11 Graff v. Farmers Mut. Home Ins. Co. of Hooper, Dodge County, 211
12 Neb. 13, 17 (1982) (a windstorm is "a wind of unusual violence or
13 tumultuous force").

14          The undisputed facts available in the record are as
15 follows.  At the time of the accident, approximately 10:00 p.m.,
16 it became "very windy and there were big waves."  (Flores Dep.
17 (Docket No. 15-2 at 262-327) at 16:8-10, 17:4-5.)  Both wind and
18 waves suddenly "came upon" the boat.  (Id. at 14:14-15.)  The
19 wind speed when the boat departed for its journey in the morning
20 was five to six knots.  (See id. at 17:20-18:5, 44:25-45:3.)  The
21 winds later accelerated to speeds of 25 to 30 knots.  (Id. at
22 45:16-18.)[1]  These higher winds prompted the captain to change
23 the boat's course, and once the captain lost control because the
24 motor was damaged by waves, the wind pushed the boat towards the
25 coast where it was destroyed.  (See id. at 45:12-15, 46:18-24.)
26 The tool that the captain used to continuously monitor the wind

---

[1] Five knots is equivalent to 5.75 miles per hour. Thirty knots is equivalent to 34.5 miles per hour.

5

1  forecast had given no indication that such high winds would be
2  present.  (Id. at 17:6-18:5.)
3         The court concludes from the above facts that there was
4  a windstorm.  The record indicates that there were high winds and
5  no rain. See Morris, 16 F. Supp. 3d at 1102.  The wind was also
6  "unusual," see Graff, 211 Neb. at 17, as there was a marked
7  increase in wind speed, the wind was unexpected, and the wind
8  both caused the captain to change the boat's course and exerted
9  force on the boat to further push it off course towards dangerous
10 conditions.
11        The court therefore will not grant summary judgment on
12 the basis that no covered windstorm existed.
13     B.   "Water" Exclusion & Efficient Proximate Cause Doctrine
14        Defendant next argues that the loss is excluded from
15 coverage.  The policy enumerates several general exclusions, for
16 which coverage is unavailable when they "directly or indirectly"
17 cause the loss, "regardless of any other cause or event
18 contributing concurrently or in any sequence to the loss."
19 (Docket No. 15-2 at 40.)  "Water" is one such exclusion, and is
20 defined to include "[f]lood, surface water, waves, including
21 tidal wave and tsunami, tides, tidal water, overflow of any body
22 of water, or spray from any of these, all whether or not driven
23 by wind, including storm surge."  (See id. (emphasis added).)
24        Plaintiff argues that despite involving water damage,
25 the loss of his personal property is covered due to application
26 of the efficient proximate cause doctrine.  Pursuant to the
27 efficient proximate cause doctrine, "'[w]hen a loss is caused by
28 a combination of a covered and specifically excluded risks, the

1    loss is covered if the covered risk was the efficient proximate
2    cause of the loss,' but 'the loss is not covered if the covered
3    risk was only a remote cause of the loss, or the excluded risk
4    was the efficient proximate . . . cause.'" Julian v. Hartford
5    Underwriters Ins. Co., 35 Cal. 4th 747, 750 (2005), as modified
6    (May 5, 2005) (internal quotation marks and citations omitted)
7    (quoting State Farm Fire & Casualty Co. v. Von Der Lieth, 54 Cal.
8    3d 1123, 1131-32 (1991)).  "[T]he 'efficient proximate cause' of
9    a loss is the predominant, or most important cause of a loss."
10   Id. at 754.  This doctrine is "the preferred method for resolving
11   first party insurance disputes involving losses caused by
12   multiple risks or perils, at least one of which is covered by
13   insurance and one of which is not."  Id. at 753 (internal
14   quotation marks and citations omitted).
15         The court recognizes that the insurance policy attempts
16   to circumvent the application of this doctrine with language
17   stating that losses caused by water are excluded "regardless of
18   any other cause or event contributing concurrently or in any
19   sequence to the loss."  (See Docket No. 15-2 at 40.)  However,
20   the court cannot give effect to that language, as "[p]olicy
21   exclusions are unenforceable to the extent that they conflict
22   with . . . the efficient proximate cause doctrine." See Julian,
23   35 Cal. 4th at 750.  "[A]n insurer may not preclude application
24   of efficient proximate cause analysis through inconsistent policy
25   language."  Id.
26         Defendant argues that the efficient proximate cause
27   doctrine does not apply because water and wind were not separate
28   contributing perils.  For there to be "two or more distinct

1  perils that cause a loss" such that the doctrine applies, "the
2  perils must be such that 'they could each, under some
3  circumstances, have occurred independently of the other and
4  caused damage.'" De Bruyn v. Superior Ct., 158 Cal. App. 4th
5  1213, 1223 (2d Dist. 2008) (quoting Finn v. Cont'l Ins. Co. 218
6  Cal. App. 3d 69, 72 (1st Dist. 1990)).  "[I]t is not necessary
7  that those two or more perils did in fact occur independently to
8  cause the loss for which coverage is sought." Id.  But where it
9  is impossible for the covered peril to occur independently of the
10 excluded peril, the two are not "independent causal agent[s]" and
11 the efficient proximate cause doctrine does not apply.  See
12 Julian, 35 Cal. 4th at 760 (declining to apply efficient
13 proximate cause doctrine where policy excluded landslides caused
14 by rain, and the type of landslide at issue "was 'always' caused
15 by water"); Coast Rest. Grp., Inc. v. AmGUARD Ins. Co., 90 Cal.
16 App. 5th 332, 345 (4th Dist. 2023), review denied (June 28, 2023)
17 (where policy excluded damage caused by viruses but covered
18 losses resulting from government orders, government's COVID-19
19 shutdown order "could not under any circumstance have occurred
20 independent of COVID-19" and thus was not a "conceptually
21 distinct peril," precluding application of efficient proximate
22 cause doctrine).
23       Critically, the record here indicates that the waves in
24 this region were always more severe closer to the shore,
25 regardless of the effect of wind.  (See Flores Dep. at 19:4-19,
26 47:3-4.)  As such, there is no indication that the waves were
27
28

solely "wind-driven," as defendant argues.[2]  The wind and waves do not appear to have been "inextricably intertwined," see Coast Rest. Grp, 90 Cal. App. 5th at 345, but rather "could each, under some circumstances, have occurred independently of the other and caused damage," see De Bruyn, 158 Cal. App. 4th at 1223.  The wind and waves therefore constitute "independent causal agent[s]" such that the efficient proximate cause doctrine applies.  See Julian, 35 Cal. 4th at 760.

        The California Supreme Court has stated unequivocally that the efficient proximate cause analysis is for the trier of fact to determine.  See Garvey, 48 Cal. 3d at 412 ("Coverage should be determined by a jury under an efficient proximate cause analysis.").  In this court's experience, such an inquiry -- laden with conceptual vagaries and undefined legal terms of art -- may well be beyond the capacity of the average juror to understand, much less apply to the facts of a case.  See Joe S. Cecil et al., Citizen Comprehension of Difficult Issues: Lessons from Civil Jury Trials, 40 Am. U. L. Rev. 727, 733-34 (1991) (describing concerns expressed by Justice Warren Burger and other commentators about the difficulty of having jurors decide complex issues ill-suited for the layperson).  Having recognized the dilemma posed by sending the efficient proximate cause question to the jury (absent a waiver of jury trial), the court nonetheless must do just that.  See Garvey, 48 Cal. 3d at 412.

        Because there are sufficient facts in the record such

---

[2] Defendant does not point to any evidence in the record that the waves were exclusively "wind-driven."  There is also no indication that the existence or severity of the wind was affected by the waves, and defendant does not argue as such.

that the trier of fact could find either the water or the wind to be the efficient proximate cause of the loss, the court must deny summary judgment on this ground.  See Sabadin v. Hartford Cas. Ins. Co., No. 13-cv-1928 JLS ANX, 2015 WL 12672750, at *5 (C.D. Cal. Jan. 13, 2015) (a genuine dispute concerning which of two perils was the efficient proximate cause of a loss "precludes resolution of th[e] case at the summary judgment stage").

        C.    Watercraft "Equipment" Provision

        Finally, defendant points to the section concerning windstorm coverage, which states that windstorm damage to "watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors" is covered "only while [the watercraft is] inside a fully enclosed building."  (Docket No. 15-2 at 38.)  Defendant argues that the personal property on the boat -- including fishing rods, fishing reels, fishing tackle, televisions, binoculars, wireless headsets, personal clothing, and a computer (see Carlton Decl. ¶ 3) -- qualifies as the boat's "equipment" under this provision and therefore is not covered.

        There is no language in the policy to support defendant's interpretation of the term "equipment," nor has defendant cited any authority that supports its interpretation.  To the contrary, the courts that have addressed this question have concluded that the type of personal property at issue here does <u>not</u> constitute a watercraft's "equipment."  See Riche v. State Farm Fire & Cas. Co., 356 So. 2d 101, 103 (La. Ct. App.), writ denied, 358 So. 2d 639 (La. 1978) (fishing equipment "formed no part of the furnishings or equipment of [sunken] boat," and

10

therefore did not fall within exclusion for "watercraft, including furnishings and equipment, while such property was not inside a fully enclosed building"); Employers' Fire Ins. Co. v. Howsley, 432 S.W. 2d 578, 580 (Tex. Civ. App. 1968) (camping and fishing equipment, clothes, and camera equipment "cannot be said to be the furnishing or equipment" of rubber boat that sunk, and therefore did not fall within exclusion for "watercraft, their furnishings and equipment except while on land").

The items of personal property at issue here could be moved to dry land, were not a permanent fixture of the boat, and do not in any way relate to the operation of the watercraft. (See Carlton Decl. ¶ 3.)  Thus, as in the decisions cited above, the court finds defendant's proposed interpretation of the term "watercraft equipment" to be unreasonable.

Because plaintiff's personal property was not "equipment" within the meaning of the policy, it is not excluded from windstorm coverage on that basis.

For the foregoing reasons, the court will deny defendant's motion for summary judgment on the breach of contract claim.

IV. Bad Faith

Defendant also seeks summary judgment on plaintiff's bad faith claim.  "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." Guebara v. Allstate Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001) (citing Love v. Fire Ins.

11

Exch., 221 Cal. App. 3d 1136, 1151 (4th Dist. 1990)).

As explained above, whether the policy covered the loss is a triable issue.  The court thus turns to the question of whether the denial of coverage was "unreasonable."  As relevant here, the California Supreme Court has explained that "an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 819 (1979); see also Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 721 (2007) (citations omitted) (an insurer acts unreasonably if it "ignores evidence available to it which supports the claim").

The claims file indicates that the initial claims review process occurred over the course of one day.  (See Docket No. 18-3 at 120-21.)  A claims adjuster reviewed a report from the port captain that did not explain how the boat sank, thereafter concluding that that there was no coverage and there was an "unknown COL [cause of loss] for boat sinking."  (See id. at 120.)  When the adjuster called plaintiff to inform him that coverage was denied, plaintiff advised her that wind was the cause of the loss, but the adjuster nonetheless affirmed that AmGUARD would proceed with denying the claim.  (See id.)

Plaintiff thereafter retained an attorney to challenge the denial.  An email from defendant's legal department dated June 8, 2022 advised the adjuster then working on the claim that "we need to make sure we speak with the guy driving the boat at the time of loss" to determine whether wind caused the loss. (See id. at 140.)  That adjuster sent an email requesting information from boat captain Flores on August 17, 2022.  (See

12

id. at 117.)³  The record does not contain any reply to that email or indicate that additional efforts were made to contact Flores.

There is no evidence that defendant spoke to the boat captain at any point during the claims review process, despite apparently having access to his contact information prior to denying the claim (see Carlton Decl. ¶ 5) and being advised by its own legal department that such investigation was necessary to determine whether the loss was covered (see Docket No. 18-3 at 140).  "Viewing this evidence in the light most favorable to [the insured], a jury could find that [the insurer's] decision" to deny coverage "was reached by ignoring contrary evidence and failing to investigate diligently," and therefore summary judgment in favor of the insurer is inappropriate.  See Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1164 (9th Cir. 2002); see also Egan, 24 Cal. 3d at 819; Wilson, 42 Cal. 4th at 721.  Accordingly, the court will deny defendant's motion for summary judgment on plaintiff's bad faith claim.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Docket No. 15) be, and the same hereby is, DENIED.

Dated: May 29, 2024

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

³ Though Flores is a Mexican citizen with limited English proficiency, the email seeking information from him was written in English.

13